that where the letters on their face show that the intestate died leaving assets in the state and in the county of New York, that gave the surrogate of the county of New York jurisdiction. Even if the action of the surrogate in granting letters could be collaterally attacked, we cannot assume, in contradiction of the letters, that he was without proof of the fact upon which the jurisdiction to issue the letters was based, or that he issued those letters upon facts differing from those stated in the letters. Again, assuming that the action of the surrogate in issuing the letters may be collaterally attacked, the proof falls short of showing that the application for such letters was in reality founded upon the bringing of an insignificant piece of property formerly belonging to the decedent within the county. If such were the fact, and the surrogate had been imposed upon, he doubtless in a direct application would have no hesitation in revoking the letters. In the face of the recital in the letters, we cannot adjudge otherwise than that such letters were duly and properly issued, and are not subject to impeachment in this action.

We have thus proceeded as though the question of fraud or collusion was sufficiently raised by the answer. Here again, however, it is doubtful if allegations that the appointment was "without jurisdiction, illegal, and without authority of law" are equivalent to allegations that the appointment was obtained by fraud or collusion. Excepting these under section 2473 of the Code of Civil Procedure, where the jurisdiction of a surrogate's court to appoint an administrator is drawn in question collaterally, "the jurisdiction" of that court to make the appointment is conclusively established by an allegation of the jurisdictional facts contained in a "written petition * * * used in the surrogate's court."

We think that the judgment and order appealed from must be affirmed, with costs. All concur, except VAN BRUNT, P. J., and McLAUGHLIN, J., who dissent.

---

(73 App. Div. 401.)

MERRILL v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

1. STREET RAILROADS — INJURIES TO PASSENGERS — ACTION — INSTRUCTION — DEGREE OF CARE TO PREVENT INJURIES.

In an action against a street railroad company for injuries to a passenger caused by another passenger being precipitated upon her by a jolt of the car as it rounded a curve, the refusal to charge that defendant owed a "very high degree of care and skill to prevent any injuries" to its passengers was not error, but a charge that the measure of the duty of defendant's servants was "to conduct themselves with reasonable care under all the circumstances, with a view of protecting their passengers," was a correct statement of the law.

2. SAME—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

The mere fact that while a street car is rounding a curve a passenger is injured by reason of another passenger being thrown upon her is insufficient, in the absence of excessive speed or of the application of more power than necessary to round the curve, to justify a recovery against the company for the injuries thus received.

3. SAME — ADMISSIBILITY OF EVIDENCE — CUSTOMARY MOTION IN ROUNDING CURVE.

Where the complaint in an action against a street railroad company for injuries to a passenger, caused by another passenger being thrown upon her while the car was rounding a curve, contained no allegations that the roadbed was out of order or improperly constructed, or that the car was not a proper one or not properly equipped, and there was no evidence that the conductor did not warn the passengers of the approach of the curve, the refusal to admit testimony of peculiar motions of the car in going around the curve at other times was not error.

4. SAME—ADMISSIBILITY OF EVIDENCE—CUSTOM OF NOTIFYING PASSENGERS OF CURVES.

In an action against a street railroad company for injuries to a passenger caused by another passenger being thrown upon her while the car was rounding a curve, wherein there was no evidence that the conductor did not notify the passengers of the approach to the curve, there was no error in excluding evidence that it was customary to give such notice.

5. SAME—EVIDENCE—MATERIALITY.

In an action against a street railroad company, for injuries to a passenger caused by another passenger, who was about to enter the car, being thrown upon her while the car was rounding a curve, the fact that the passenger who was so thrown upon plaintiff was talking to the conductor just before the accident was immaterial.

6. SAME—INSTRUCTIONS—RULES FOR PROTECTION OF PASSENGERS.

There being no evidence in the case that defendant had not made rules and regulations for the protection of its passengers, a charge that it was defendant's duty to make such rules and that failure to make them was negligence was properly refused.

O'Brien and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by Annie M. Merrill against the Metropolitan Street Railway Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

George A. Stearns, for appellant.

Theodore H. Lord, for respondent.

INGRAHAM, J. The plaintiff was on July 30, 1895, a passenger upon a cable car operated by the defendant. As the car was going around a curve from Fifty-Third street to Ninth avenue, the plaintiff was seated in the car, and another passenger, who was in the act of entering the car from the platform, was thrown upon the plaintiff by a violent jolt or jerk of the car, from which she sustained injuries. There was no evidence as to the speed at which the car was going around this curve, or that the conductor failed to warn the passenger who was thrown upon the plaintiff as the car was approaching the curve. The sole fact relied upon by the plaintiff is that, as the car rounded the curve, a passenger attempted to enter the car, when by a violent jerk he was precipitated upon the plaintiff. The court submitted to the jury the question as to whether the car was going at an improper or unusual rate of speed, who found a verdict for the defendant.

The main question presented is as to the refusal of the court to charge that "although such common carrier is not an insurer of the

safety of passengers, it is its duty to use a very high degree of care and skill to prevent any injuries to them." This the court refused, and charged the jury that "the measure of duty on the part of the defendant's servants was to conduct themselves with reasonable care under all the circumstances, with a view of protecting their passengers," as applicable to the particular facts in this case; basing their instruction upon the cases of Stierle v. Railway Co., 156 N. Y. 70, 50 N. E. 419, and Ayers v. Railway Co., 156 N. Y. 104, 50 N. E. 960; and we think that in view of the decision of these cases the charge was correct.

In the Stierle Case the court said that—

"The obligation of carriers of passengers to exercise the highest degree of care which human prudence and foresight can suggest only exists with respect to those results which are naturally to be apprehended from unsafe roadbeds, defective machinery, imperfect cars, and other conditions endangering the success of the undertaking. In every case the degree of care to be exercised is dependent upon the circumstances, and if the accident is attributal to the existence of defects in the road, or in the mechanical appliances availed of for the operation of the railroad, by reason of which there was a possibility of loss of life or limb to the traveling public, the strict rule requiring the highest degree of care and of human skill would be applicable."

In that case the plaintiff was injured because of the alleged negligent manner in which the driver of the car attempted to switch his car from one track to another to cross the Harlem River Bridge, and it was held that under those circumstances the defendant was only liable for the failure of the driver to use that skill and care which would be required by an ordinary careful and prudent man. In this case the plaintiff was injured by a passenger falling on her, which fall was caused by a jerk in the car rounding a curve, and the same rule as to the degree of care would seem to be applicable. In the Ayers Case the plaintiff was a passenger, and after she had got upon the car and was about to take a seat it gave a sudden jerk, which threw her back on the seat and twisted her knee. It was held that in the absence of evidence as to the speed of the car, or that there was an excess of power used while passing the curve, there could be no recovery, and, applying this rule, it would seem that there was no evidence of negligence in this case. There was nothing here to suggest that this passenger, in entering the car when he did, would cause an injury to the other passengers. In the absence of excessive speed or the application of more power than was necessary to round this curve, there would certainly be no evidence to justify the jury in finding that the defendant was negligent, and, the jury having found that the speed of the car was not excessive, the defendants were entitled to a verdict.

The cases of Keegan v. Railroad Co., 34 App. Div. 297, 54 N. Y. Supp. 391, affirmed in 165 N. Y. 622, 59 N. E. 1124, and Zimmer v. Railroad Co., 36 App. Div. 265, 55 N. Y. Supp. 308, do not apply. In those cases, the negligence of the defendant was predicated upon the improper operation of the car, and in the operation of its car there can be no doubt but that the defendant is bound to exercise the greatest care for the protection of the passengers; but here there was no evidence that such care was not exercised, as the mere fact that the car

gave a jolt in turning the curve was not sufficient to justify a finding that more power was used than was necessary for the purpose. The plaintiff testified that she had ridden on this line around this curve from 75 to 100 times prior to the accident, and she was asked: "Did you observe anything peculiar in the motion of the car in going around these corners at Fifty-Third street and Broadway and Fifty-Third street and Ninth avenue?" That was objected to by the defendant, and the objection sustained, but I do not think that this was error. The question related to a peculiarity in the motion of the cars of the defendant's road in rounding the curve on former occasions. There was no allegation in the complaint that the roadbed was out of order or improperly constructed, or that the car was not a proper car, properly equipped for the purpose for which it was used, and it seems to be entirely immaterial whether there had been anything peculiar in the motion of the cars at other times when rounding this curve. The plaintiff claims that this was relevant to show that the motion was such that the conductor was required to give notice to the passengers of the approach of the curve; but as there was no evidence to show that such notice was not given at the time of the accident, the evidence was immaterial for that purpose, even if it would have been competent to predicate negligence upon the fact that no such notice was given. This would also apply to a refusal of the court to allow the plaintiff to show that it was customary for the conductors to give such notice.

The fact that the person who was thrown upon the plaintiff had been talking to the conductor while the car was going through Fifty-Third street would also seem to be immaterial, as this conversation with the conductor had no relation to the accident. The conversation between the plaintiff and the conductor after the accident was plainly immaterial, was not a part of the res gestæ, and had no relation to the cause of the accident.

The refusal of the court to charge that it was the duty of the defendant to make necessary rules and regulations for the protection of its passengers from injury, and a failure to make such reasonable rules therefor was negligence on the part of the carrier, was properly refused, as there was no evidence in the case that the defendant had not made such rules and regulations, or that this accident had any relation to a violation of the rules of the company.

The other requests to charge that were refused are covered by what has been already said as to the duty resting upon the defendant, and do not require further discussion. All of these requests to charge are to be judged by the facts in this particular case, and while they undoubtedly contain a correct statement of the law affecting an accident caused by a failure of the defendant to provide a suitable roadbed and cars, or to properly operate them, they were not applicable to a case where the injury to the passenger was caused by the act of another passenger, over whom the defendant's agents had no control.

It follows that the judgment and order appealed from should be affirmed, with costs.

McLAUGHLIN, J., concurs.

PATTERSON, J. I concur in the general views of the case as expressed in the opinion of Mr. Justice INGRAHAM, but I do not concur in the inference that may be drawn therefrom that Stierle v. Railway Co., 156 N. Y. 70, 50 N. E. 419, is authority controlling under any other state of facts than such as appear in the record in that case.

O'BRIEN, J. (dissenting). I dissent from the conclusion reached by the majority of the court in this case, thinking, as I do, that error was committed upon the trial in refusing to permit the plaintiff to show, as alleged in the complaint, that the place where the accident occurred—

"Was well known to be dangerous, and it was customary for the conductor on approaching said spot to give warning to all passengers in order that they might secure themselves against the jolt, jar, or strain which experience had taught was likely to occur in turning said corner."

The complaint had further alleged—

"That no warning of the approach to this dangerous place was given, nor was any effort made to prevent the man from entering the car at that moment, * * * that the injury to plaintiff occurred * * * solely by reason of the negligence * * * of the said * * * company, its servants and employés, in the management and running of its said car, in not having proper rules for the management and running of its cars or in neglecting to apply such rules on the occasion referred to, in permitting said car to go around the said curve at Fifty-Third street and Ninth avenue at a great and unsafe rate of speed, and in failing to call the attention of the passengers to the approach to this dangerous turn, and in permitting the man herein mentioned * * * to enter the said car at the moment of turning the curve."

Although the summarized evidence presented in the record upon this appeal, on which reliance is solely placed upon certain erroneous rulings, does not show either that the car was going at an excessive rate of speed or that no warning was given just prior to the accident, the court, in charging the jury, said:

"You have the evidence of the plaintiff herself, who states that the speed of this car while going or being driven around the turn was from ten to twenty miles an hour, and that the speed was much accelerated just before the curve was reached. She states that the speed of the car while going around the curve was twice as great as while it was coming down the street. Now there is no contradiction of her testimony; no evidence has been offered to dispute her; no reason has been given why the defendants have not put the conductor upon the stand."

And subsequently, when the plaintiff requested that the jury be charged—

"That if the carrier knew, or had reasonable grounds to believe, that the car in turning * * * would be jolted, * * * so that injury would possibly result to passengers seated or standing, it was its duty to warn its passengers that they might secure themselves from injury,"—

the court replied:

"I refuse to charge further than I have already instructed the jury,— that there is no duty resting upon the defendant to warn people, and yet the failure to volunteer such a warning may be taken into consideration in determining whether proper care has been observed in the railroad company in the operation of its car with respect to speed."

Apparently, therefore, evidence was given, on the trial, both that the car rounded the curve at an excessive rate of speed and that no warning was given. . The question, ·however,· which is presented upon this appeal, is whether the court erred in the theory upon which the case was tried, in refusing to receive testimony offered to show that the place where the accident occurred was an especially dangerous one, calling for more than ordinary care on the part of the defendant. The case cited in the prevailing opinion of Stierle v. Railway Co., 156 N. Y. 70, 50 N. E. 419, recognizes that—

"If the accident is attributable to the existence of defects in the road or in the mechanical appliances availed of for the operation of the railroad, by reason of which there was a possibility of loss of life or limb to the traveling public, the strict rule requiring the highest degree of care and of human skill would be applicable."

Evidently with this rule in mind, the attorney for the plaintiff, after she had testified that several times a week she had ridden around this corner, and at least 75 out of a 100 times prior to the accident, asked her, "Did you observe anything peculiar in the motion of the car in going around these corners at Fifty-Third street and Broadway and Fifty-Third street and Ninth avenue?" and objection was made, "except it be confined to the day and time when the accident happened." Plaintiff's counsel then stated that he wished to show the manner in which cars went around these corners and the custom of giving warning upon approaching the curves, but the objection was sustained, the court saying: "The inquiry should relate to the particular occurrence, whether at the time in question this defendant conducted itself with proper care in the operation of this car around this angle;" and, when asked if it might be shown that ordinarily the warning to "hold fast" was given, answered: "No, because there is nothing in the law requiring them to do that;" and exception was taken. As already pointed out, the court thereafter, in charging the jury, refused the plaintiff's request that, if danger was to be apprehended in rounding the curve, warning should be given; and there were a number of requests to charge in effect that, if a high degree of care would have prevented the accident, such care should have been exercised by the defendant, which were denied,·the court saying that "the measure of duty on the part of the defendant's servants was to conduct themselves with reasonable care under all the circumstances, with a view of protecting their passengers." Such instruction was entirely consistent with the case as it stood, with all evidence of the dangerous character of that part of the roadbed where the accident occurred, excluded; but had such evidence been admitted, as, in view of the allegations of the complaint, I think it should have been, then the plaintiff would have been entitled to have the jury charged that, if they found that danger was to be expected in rounding this curve due to the·jolting of the car, a high degree of care was called for on the part of the defendant in avoiding injury to its passengers therefrom.

For the error, therefore, in excluding the evidence offered to show the dangerous character of the curve or of the movement of

the car in rounding it, I think that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

HATCH, J., concurs.